# Little v. Citizens' Savings Bank of Paducah.

(Decided Feb. 7, 1933.)

W. MIKE OLIVER for appellant.

J. D. MOCQUOT for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On August 25, 1925, Mabel G. Little and her husband, John W. Little, executed and delivered to the Citizens' Savings Bank of Paducah their promissory note for $8,000, payable three years after date with interest from maturity. On April 27, 1926, Mrs. Little and her husband executed to the Citizens' Savings Bank a note for $800, payable six months after date, with interest from maturity. On June 29, 1928, Mrs. Little and her husband executed to the Citizens' Savings Bank a note for $1,500, payable 60 days after date, with interest from maturity. These notes were secured by separate mortgages on Mrs. Little's home place situated in Paducah.

This action was brought by the bank to recover on the notes, and enforce its mortgage lien. On final hearing the chancellor held all defenses unavailable, and rendered judgment in favor of the bank for $9,482.70, and ordered a sale of the mortgaged property to satisfy the debt, interest, and costs. From that judgment this appeal is prosecuted.

There is no attack on the judgment awarding a re-

covery on the $800 note and the $1,500 note, but it is insisted that the chancellor erred in not sustaining the defense to the $8,000 note to the extent of $5,600. Briefly stated the defense as pleaded in the original answer, and amplified in the amended answer, was that appellant's husband, John W. Little, was indebted to the bank in certain sums, which were not secured; that there was a tract of land in Paducah known as the Littlesville property, of which 32½ acres were owned by John W. Little, and 25 acres were jointly owned by him and his father. The bank held mortgages on that portion owned by her husband individually, but had no lien on the 12½ acres which he subsequently inherited on the death of his father; that she refused to unite in a mortgage on the 12½ acres, or any contracts providing for the sale of the property; that for the purpose of inducing her to do so, the bank wrote her the following letter:

"Nov. 19th, 1924.

"Mrs. John W. Little,
  "City.
"Dear Madam:

"I have agreed with your husband that if and when the Littlesville property has been sold according to the schedule price of $24,000 or better and the notes and cash in this amount shall have been turned over to the bank, we then agree to use enough of the proceeds of the sale to pay off the mortgage on your home.

"R. Rudy, President."

That relying on the letter, and in consideration thereof, she thereafter did unite in a mortgage on the 12½ acres of land, and in certain contracts providing for its sale; that certain sales were made by one Crawley and others, and that afterward the remainder of the property was sold to R. A. Becker for about $70,000, and payments to the amount of $28,117.88, which was more than the $24,000 mentioned in the letter, were made to the bank; that at the time the agreement was made there was a valid mortgage on her property to the extent of $5,600; and that contrary to this agreement the bank declined to discharge this mortgage.

It is first insisted that appellant was entitled to judgment as the allegations of the amended answer were not denied or controverted of record. We find

that prior to the submission of the case the following order was entered:

"By agreement of parties it is ordered that all affirmative matter contained in the plaintiff's reply to the answer of defendants, Mabel G. Little and John W. Little, be taken as denied and controverted of record. By agreement of parties it is ordered that all affirmative matter contained in the answer of Mabel G. Little, be taken as denied and controverted of record. Then came defendant, Mabel G. Little and filed her amended answer herein, four exhibits attached thereto."

Immediately after the order is the following: "The answer filed in the foregoing order is in words and figures as follows, to-wit:" Then follows the amended answer in full. As plaintiff had already filed a reply denying the allegations of the original answer, no order controverting the affirmative matter contained in the answer was necessary, and as the amended answer was described in the record as "the answer filed in the foregoing order," it cannot be doubted that the parties intended that the amended answer should be controverted of record. Not only so, but as the amended answer was a mere elaboration of the original answer, and was treated by the parties as having been controverted of record, and the case tried on that theory, a reversal will not be ordered on the technical ground urged for the first time in this court that the allegations of the amended answer were not controverted. Hardin's Committee et al. v. Shelman, 245 Ky. 508, 53 S. W. (2d) 923.

The record discloses that at the time the bank's letter was written to Mrs. Little a written contract between the Littles, the bank, and W. R. Crawley had been drawn up for the sale of the lots in the Littlesville addition at certain specified prices, and the proceeds of the sale were to be turned over to the bank. Later the contract was extended. A few sales were made under this contract, and the plan was abandoned. Several months later another contract was drawn up providing for the sale of the lots at certain prices by one R. B. Phillips. This contract was afterward set aside. On February 18, 1925, Little and wife mortgaged the Littlesville property to the bank to secure an indebtedness of $25,000. On June 22, 1926, the Littles,

for $1 cash and other good and valuable considerations, conveyed all the remaining lots in the Littlesville subdivision to R. A. Becker. On the same day the Beckers mortgaged the property to the bank to secure an indebtedness of $30,000, and executed a second mortgage to John W. Little to secure an indebtedness for $40,000. Under this agreement the lots brought about $70,000. Of the proceeds, $30,000 represented by cash and notes, was turned over to the bank and placed to the credit of Mr. Little. Little then paid the indebtedness to the bank by three checks, aggregating $28,106.88. The balance of $1,893.12 was afterward checked out by him. In addition to this, Little received out of the proceeds of the sale about $28,000, which he used to buy other property.

Mrs. Little first testified that she was induced by the letter, and by representations of Mr. Rudy, to increase the mortgage on her home place from $5,600 to $8,000, and also to unite in the $25,000 mortgage on the Littlesville property. She further testified that had it not been for the letter she would not have increased the mortgage on the home place, or signed the additional mortgage for $25,000. Afterward Mrs. Little gave another deposition in which she abandoned the theory that she was induced by the letter to sign the additional mortgage on her home, but testified that she refused to sign the contract for the sale of the property through Crawley, but did sign it after the letter was delivered. Afterward she signed the $25,000 note and mortgage because she had the agreement with Mr. Rudy that he would protect her interest in her home to the extent of $5,600. Afterwards the property was sold to Becker for about $70,000. After the payment of the bank's debt, the notes payable to Mr. Little were sold for cash, or other property. Mr. Little testified that the agreement with Crawley had been presented to Mrs. Little, and she would not sign it until she was assured that the home place would be taken care of out of the proceeds, and Mr. Rudy wrote the letter for that purpose.

On the other hand, Mr. Rudy admitted sending the letter to Mrs. Little, but testified that it was written and signed as a part of the proposed agreement between J. W. Little and Crawley; that the Crawley agreement was never carried out, and had no connec-

tion with the subsequent sale to R. A. Becker. He recalled that they were to release the lien on Mrs. Little's home after they had sold the property under the Crawley agreement, and had collected enough to satisfy the debt. They never agreed to release the $8,000 mortgage except upon the payment of that sum of money.

Looking at the letter in the light of all the circumstances, it is at once apparent that it is not susceptible of the construction that the bank agreed to release any part of the indebtedness owing by the Littles. On the contrary, it was estimated that the Littlesville property would bring enough not only to discharge the indebtedness due the bank on other obligations, but that due and secured by the mortgage on Mrs. Little's home. As the proceeds of the sale were to be turned over to the bank, the bank merely agreed to use enough of the proceeds to pay off the mortgage on Mrs. Little's home. It is also clear from the evidence that the letter was written to induce Mrs. Little to sign the Crawley agreement, which was abandoned, and had no bearing on the subsequent mortgage for $25,000, or the sale two years later to Becker. That sale was negotiated by Mr. Little. The bank was secured by a mortgage. Enough of the proceeds were to be paid to the bank to extinguish the indebtedness due the bank. On the sale of the lots, and payment of the purchase price, $30,000, was placed to the credit of Mr. Little. Out of this deposit he paid the bank's debt, and checked out the balance. In addition to this he received about $28,000 more from the proceeds of the sale. As the letter in question did not apply to the Becker transaction, and the bank did not receive any of the proceeds of the sale in excess of its debt secured by the mortgage on the Littlesville property, it was under no obligation to release the mortgage on the home place. On the contrary, the case is simply one where Mr. Little received about $30,000 in excess of the indebtedness secured by the mortgage on the Littlesville property, and instead of using the money to discharge the mortgage on the home place applied it to other purposes.

It follows that the judgment was correct.

Judgment affirmed.